Joseph G. Fritsch, J.
This proceeding was. brought on by an order to show cause signed on July 22, 1976 by a fellow Justice of this court wherein the petitioners are seeking from Lawrence T. Kurlander, District Attorney of Monroe County, disclosure and discovery as follows:
1. Whether he or any member of his office has planted a bugging device in any area or areas of the Hall of Justice between January 1, 1976 and July 23, 1976.
2. Whether he or any member of his staff has placed a bugging device in any portion of the Monroe County Jail, including but not limited to individual jail cells and attorney-client interview rooms, between January 1, 1976 and July 23, 1976.
3. The names of each client of Peter L. Yellin and Roy W. King whose conversations were in fact monitored by the District Attorney or members of his staff.
4. The date or dates that these conversations were so monitored.
5. The specific places where the electronic equipment was placed by the District Attorney or members of his staff, and
6. To furnish to Peter L. Yellin, Esq., and Roy W. King, Esq., the tape recordings of any conversations of their respective clients so monitored and the transcriptions of such recordings, if transcribed.
The show cause order restrains District Attorney Kurlander "from placing any electronic surveillance devices in any area *1085 of the Hall of Justice or any area of the Monroe County Jail * * * pending the hearing”.
The proceeding sounds in the nature of prohibition pursuant to CPLR article 78 and/or one seeking injunctive relief. The petitioners in oral argument request an evidentuary hearing on the question of whether electronic devices were installed with or without a court order in the Hall of Justice or in the Monroe County Jail, and on the eavesdropping warrant granted by Judge Culver K. Barr on June 28, 1976, and further, an order restraining the Monroe County District Attorney from any future eavesdropping in the Hall of Justice and Monroe County Jail.
The respondent, individually and as District Attorney of Monroe County, moves for an order dismissing the petition pursuant to CPLR 3211 on the grounds that:
1. There is another action pending between the same parties in another court of this State.
2. The petition fails to state a cause of action.
3. The court shall decline subject matter jurisdiction, and cannot grant the relief requested.
The basic issue of subject matter jurisdiction is presented to the court by the motion.
The undisputed facts are that an eavesdropping warrant was signed by County Judge Culver K. Barr on June 28, 1976. It was issued in a criminal action entitled People v Liccone and it authorized the eavesdropping of communications between Liccone and Watson, intercepted from Room 212 on the second floor in the Hall of Justice, Rochester, New York. The warrant, which was signed and issued at 8:30 a.m. on June 28, 1976 was to terminate on the same day at such time as Liccone and Watson were finally removed from Room 212. The warrant ordered that it be executed and conducted in such a manner as to minimize the interception of communications not otherwise subject to eavesdropping under the CPL. Room 212 is a room adjacent to Courtroom 206, Judge Barr's courtroom on the morning of June 28, 1976. Room 212 is used to contain prisoners before and after arraignment and by attorneys to confer with their clients prior to or after court appearances. Both Liccone and Watson were in custody under indictment, prior to June 28, 1976, on the charge of murder in the second degree, the charge to which the eavesdropping warrant related.
*1086 Petitioner defendant Watson was represented by attorney Roy W. King who conferred with him about his indictment in Room 212 prior to his arraignment on the morning of June 28, 1976. Following their conference and after attorney King had left Room 212, petitioner defendant Watson by accident found an electronic surveillance device which had been placed in Room 212 pursuant to the warrant. Later, on the morning of June 28, 1976, attorney King was contacted by Assistant District Attorney Edward J. Spires. He learned of the eavesdropping warrant and the application for it and that some of his conversation with his client Watson was intercepted and recorded from Room 212. A hearing stenographer investigator in the District Attorney’s office, one Thomas J. Lauricella, who installed the device in Room 212 and who monitored and supervised the two receiving devices designed to receive the audio from the listening device in Room 212, in his affidavit sworn to July 30, 1976, states that Mr. King’s conversation with his client was partially recorded. He states that he recognized the voice of defense counsel King.
In dispute are the allegations of petitioners that subsequent to the June 28, 1976 arraignment, Assistant District Attorney Edward J. Spires told him there were other conversations overheard and recorded from listening devices that were placed at unknown places either in the Monroe County Jail or in the Hall of Justice; also, that petitioner defendant Fred Watson at approximately 6:30 a.m. on the morning of June 28, 1976, found a black leather box and what appeared to be a transmitter together with two pieces of wire, underneath a toilet bowl located in his cell in the Monroe County Jail; also that a fellow jail inmate, one David Walker, at approximately 7:00 a.m. on the morning of June 28, 1976, was shown by petitioner defendant Fred Watson a small round object with wires connected and a black leather case, which Watson said he found underneath his toilet bowl located in his cell in the Monroe County Jail.
In further dispute are the allegations contained in the affidavit of Assistant Public Defender Charles T. Noce, sworn to July 21, 1976, that on July 12, 1976 District Attorney Kurlander informed him that his (Noce’s) information "that a bugging device was placed in the holding room adjacent to Judge Barr’s courtroom by a member of the District Attorney’s office” was not correct, but "that a bugging device was in fact planted in the holding cell in the corridor behind the *1087 courtrooms of Judge Celli and Judge Mark in the Hall of Justice on the morning of June 28, 1976” and further, the allegations contained in the affidavit of chief trial assistant in the office of the Monroe County Public Defender, Salvatore J. Panzarella, sworn to July 29, 1976, that on the evening of June 30, 1976 in the office of the Monroe County District Attorney in the Hall of Justice, Mr. Kurlander told him that a bugging device was placed in the holding cell of the second floor of the Hall of Justice in the corridor between the courtrooms of Judge Mark and Judge Celli, which is a room other than Room 212, and that he, at the instance of District Attorney Kurlander then proceeded with him to the holding room between the courtrooms of Judges Mark and Celli where District Attorney Kurlander informed him "that a bugging device was placed underneath a wooden bench located in that holding cell”.
The petitioner defendant William Booker, who was in jail custody under indictment for the crimes of possession of a dangerous weapon in the second degree and menacing, and who is represented by the Public Defender’s office, was on the morning of June 28, 1976, shortly after 9:00 a.m., placed in this holding cell to await his arraignment on the pending indictment before Judge Celli. In said cell he counseled with his attorney, Special Assistant Monroe County Public Defender Charles E. Steinberg.
These various allegations in the petitioners’ pleadings are disputed by the affidavits of District Attorney Lawrence T. Kurlander, Assistant District Attorney Edward J. Spires, Thomas A. Lauricella, Sgt. Jack A. Schifano, Monroe County Sheriff, Monroe County Deputy Sheriffs Joseph S. Gennuso and Douglas Nordquist, Chief Trial Assistant District Attorney Howard R. Relin and Assistant District Attorney Michael Murray, all sworn to on July 30, 1976. District Attorney Kurlander at paragraph numbered 6 of his affidavit states, "The only listening device placed within the Hall of Justice, Monroe County Public Safety Building, or Rochester Public Safety Building, to your deponent’s knowledge, was the listening device which was placed within Room 212 consisting of a device having the appearance of a tie-clasp, connected wires, and a transmitter contained in a black leather case.”
The following basic facts must be recognized in deciding the motion of the District Attorney to dismiss the petition herein:
1. The criminal charges against the petitioners defendants *1088 are pending in the Monroe County Court under its jurisdiction and on the calendars of County Judge Culver K. Barr and County Judge Andrew G. Celli, respectively.
2. The court in this proceeding is not an appellate court empowered or authorized by law to review the discretionary acts or decisions of Judge Barr in any of the criminal cases pending before him. This right is in the Appellate Division on proper appeal taken. Specifically, this court has no power or jurisdiction to review the legality of the eavesdropping warrant signed by Monroe County Judge Culver K. Barr on June 28, 1976, pursuant to CPL 700.30.
3. This court is not empowered by law, as would be a specially appointed prosecutor and Grand Jury, to investigate the alleged commission of the crime of eavesdropping, a class E felony, as defined in section 250.05 of the Penal Law of the State of New York, and is not empowered to conduct evidentuary hearings relating thereto even though the charge is made against a public officer or a constitutional officer such as the District Attorney of Monroe County. There is only pending before this court the current civil proceeding in the nature of a proceeding under article 78 of the CPLR.
An article 78 proceeding asking for prohibition and seeking injunctive relief is an extraordinary remedy which should not be utilized where an adequate remedy at law is available nor where a remedy is available in another court where a matter is pending between the same parties. Prohibition is an extraordinary remedy to be used only in clear-cut situations and in the sound discretion of the court. The burden rests upon the petitioner to prove its necessity. It is reserved to those situations where a public official is to be restrained from the performance of an act which is clearly and unquestionably beyond his jurisdiction. (See Matter of Martinis v Supreme Ct, 15 NY2d 240, 251; see, also, 8 Weinstein-Korn-Miller, NY Civ Prac, par 7801.07.)
In the Matter of Nigrone v Murtagh (36 NY2d 421) Chief Judge Charles Breitel, writing for the court, stated at page 425 as follows: "Consequently, nothing in a procedural or jurisdictional sense affects the pending criminal action. This is not to say that the alleged prosecutorial misconduct would not be raisable properly as a bar by motion or defense pleaded to the court which has jurisdiction. This may be done in the same manner as any purported illegality, such as unauthorized wiretapping, or illegal search and seizure, which might *1089 undermine a prima facie otherwise valid basis for a criminal action (see CPL art 710). Indeed, the motions made under section 149 of the Judiciary Law were precisely of that character. As observed later, the intermediate determinations on those motions are not appealable at this time and such nonappealability may not be indirectly eluded by the device of an article 78 proceeding. In short, the alleged prosecutorial misconduct consists of facts, albeit conceded, outside the pending criminal action, even if they provided the setting for inducing or uncovering the allegedly criminal conduct upon which the criminal action is based.” (Emphasis added.)
In the Matter of State of New York v King (36 NY2d 59, 62), Chief Judge Charles Breitel stated as follows: "The courts may not entertain a collateral proceeding to review an error of law in a pending criminal action, however egregious and however unreviewable, by way of immediate appeal or by appeal after the final judgment of conviction or acquittal, whichever may eventuate.” (Emphasis added.) And Chief Judge Breitel further stated at page 65, as follows: "Were the court to conclude otherwise than to reject this unsound and novel extension of the extraordinary ancient remedies of prohibitions and mandamus, it might be a credit to man’s ingenuity but a disabling discredit to the jurisprudence.’’ (Emphasis added.) Failure to follow the standards and principles stated by the New York Court of Appeals would flood the courts with collateral proceedings such as the one before this court and would give unwarranted preference to equitable remedies where an adequate remedy already exists at law. (See, also, Matter of State of New York v Celli, 48 AD2d 758.)
The request by petitioners defendants for a permanent court order forever restraining the Monroe County District Attorney from any eavesdropping in the Hall of Justice or the Monroe County Jail cannot be granted by this court. There is no specific prohibitive legislation or existing case law limiting the issuance of such an eavesdropping warrant. There is, however, adequate statutory authority for controlling and limiting the issuance of a warrant to be used in court or jail premises or elsewhere in violation of the United States Constitution. This statutory control is contained in CPL 700.15 which states only under what circumstances an eavesdropping warrant may issue. It reads as follows:
"1. Upon an appropriate application made in conformity with this article; and
*1090 "2. Upon probable cause to believe that a particularly described person is committing, has committed, or is about to commit a particular designated offense; and
"3. Upon probable cause to believe that particular communications concerning such offense will be obtained through eavesdropping; and
"4. Upon a showing that normal investigative procedures have been tried and have failed, or reasonably appear to be unlikely to succeed if tried, or to be too dangerous to employ; and
"5. Upon probable cause to believe that the facilities from which, or the place where, the communications are to be intercepted, are being used, or are about to be used, in connection with the commission of such offense, or are leased to, listed in the name of, or commonly used by such person.”
If a Judge receiving the ex parte application of the District Attorney such as the one here for an eavesdropping warrant utilizes sound discretion pursuant to the conditions precedent in this statute, the injunctive restraining order requested by the petitioners herein would be unnecessary, and the constitutional rights of the citizens would be fully protected.
Viewing the contradictory and diametrically conflicting sworn affidavits before me in this proceeding; affidavits of public officials, peace officers, officers of the court and citizens, and the sinister significance and repugnance of their possible implications, and the public interest therein, I. am most tempted to hold that this court has the^ inherent power to order a plenary hearing to determine the truth. Regardless of the provocation, however, I must hold that, as a matter of law, this court does not have jurisdiction of the subject matter for the relief sought in the petition herein. This court, bound by the Constitution of the State of New York, the statutes of the State and appellate case law, is not all things at all times to all people. Redress here is a motion in the Monroe County Court and appeal therefrom; by an investigation conducted by a specially appointed prosecutor and Grand Jury having authority; or perhaps by an action in United States Federal court, for violation of civil and constitutional rights or an action for money damages.
Let there be no doubt but that the petitioners, their attorneys and those who appeared before me amici curiae in this proceeding, including the interested citizens, have all performed a public service in the furtherance of the administra *1091 tion of justice and the awareness of our constitutional rights. The District Attorney, as a result thereof, has reformed his thinking and has now "concluded that the placing of an eavesdropping device within the confines of the Hall of Justice constitutes a bad precedent” and that "eavesdropping devices should not be used in the courthouse or other similar settings unless a grave and present danger exists to the building or its occupants”. He should be taken at his word, without speculation as to what would be the future situation were this proceeding not have been instituted.
The petition herein is dismissed.